[Civil No. 4246.   Filed December 23, 1940.]

[108 Pac. (2d) 580.]

W. R. HUTCHINS, State Highway Engineer, Arizona State Highway Department, Appellant, v. NORMAN E. SWINTON, Appellee.

Mr. Joe Conway, Attorney General, and Mr. A. R. Lynch, Assistant Attorney General, for Appellant.

Messrs. Langmade & Langmade, for Appellee.

LOCKWOOD, J.—Norman E. Swinton, hereinafter called plaintiff, filed a petition in the superior court of Maricopa county for a writ of *mandamus* against W. R. Hutchins, as state highway engineer, hereinafter called defendant, commanding him to approve and pay a certain claim of $766.78 for wages alleged to be due plaintiff from the Arizona state highway department. The matter came on for hearing before the court, which finally issued a peremptory writ directing defendant to approve and pay the claim of plaintiff in the sum of $261.80, and this appeal was taken.

There is no serious dispute as to the facts essential to a determination of the case, and they may be stated as follows: During August, 1937, the Arizona highway commission, hereinafter called the commission, acting under the authority of section 1350, Revised Code of 1928, as amended by chapter 12, session laws of 1933, fixed a minimum wage of 62½¢ per hour for manual labor, which wage remained in force during all the times set forth in this opinion. Between September 1, 1938, and August 8, 1939, plaintiff actually worked two hundred and fifty-five days, at the rate of eight hours per day, as a janitor in the Arizona state highway department, at Phoenix, performing manual labor, which, at the rate of 62½¢ per hour, would have entitled him to have received $1,275. During such period defendant paid plaintiff only $1,013.20, the difference between what he was actually paid and what

was due him if he were entitled to receive the 62½¢ per hour, being $261.80. A claim therefor properly itemized and verified was duly presented to defendant before the filing of this action, who rejected and refused to approve or pay it.

Sections 1579, 1580, 1581 and 1585, Revised Code of 1928, provide for the manner in which the finances of the highway department, so far as material to this case, are handled, and read, in part, as follows:

"§ 1579. Budget estimate, limitations thereon. The commission shall make, on or before the first day of June each year, written budget estimates setting forth: . . . 8. the estimated amount to be expended for the payment of every cost and expense, itemized by classes, of each department of the commission during the next ensuing fiscal year; . . .

"§ 1580. Publication of budget; notice, hearing; final adoption; printing. Said budget shall be published on or before the second Monday in June . . . together with a notice that a public meeting will be held . . . whereat said budget will be considered . . . Following said meeting . . . the commission . . . shall adopt said budget as published or as adjusted and certify the same to the auditor. . . . The said budget shall thereupon become and remain the budget and limit of expenditures for all purposes for the ensuing fiscal year. . . .

"§ 1581. Expenditures in excess of budget prohibited; exceeding; penalty. Except as authorized in the following section, no expenditures for any purpose shall be made by the commission or under its authority in excess of the amount estimated and provided in the budget for each of the items thereof during the fiscal year for which such budget is adopted. . . .

"§ 1585. Imprest fund. The auditor shall issue his warrant in a sum not to exceed fifty thousand dollars upon claims properly certified by the state engineer for the purpose of creating an imprest fund to facilitate the payment of small expenditures, payrolls and expense accounts, but none others, in connection with the operation of the department, and the treasurer

shall pay the same out of the state highway fund. When the auditor has issued such warrant, he shall not issue a further like warrant until there is filed with him an itemized and verified statement by the state engineer, and accompanied by proper receipts and vouchers, showing in detail the expenditure and distribution of the sum previously advanced for said imprest fund and the budget items to which each item of such statement shall be charged. Upon receipt of such statement the auditor shall charge each item thereof to the proper budget account, and issue a further warrant, upon claims, to replenish such imprest fund, the total thereof shall not at any time exceed fifty thousand dollars.''

Under these sections the manner of handling claims for services such as those rendered by plaintiff is as follows: The claim is presented to the highway engineer, and if he approves it, instead of then transmitting it to the state auditor for her approval, as is done with most claims arising in the various departments of the state, he draws his check upon the imprest fund referred to in section 1585, *supra,* which, after the treasurer has paid the auditor's warrant for such fund, is kept by the state engineer, subject to his check as such engineer, in such bank as he sees proper, and the check is paid directly to the claimant without the necessity of the latter securing a warrant from the auditor and having it paid through the state treasurer. When the imprest fund becomes exhausted, the state engineer reports to the auditor the expenditures which he has made therefrom, together with the necessary vouchers and she reviews them, and if they are legitimate public expenditures charges them against the various budget items set up under sections 1579 and 1580, *supra,* and then draws another warrant for fifty thousand dollars for the imprest fund. The purpose of this is to see that small claims against the highway department do not have to wait the slow,

ordinary process of handling claims against the general funds of the state, but may be paid immediately upon the authorization of the state engineer, he being responsible on his bond that the claims which he thus paid are proper public expenditures.

The commission prepared its budget for the fiscal years 1938–39 and 1939–40, in the manner provided by sections 1579 and 1580, *supra*. In each of these budgets, as prepared, published and certified to the auditor was an item classified as A. F. E. 115, under which is shown the classification "General Office Division, Salaries, Building Maintenance and General." The item was not further broken down. The amount budgeted under this classification for 1938–39 was $36,713, while for the fiscal year 1939–40 it was $41,-662. The commission did, however, after the adoption and certification of the budget as above, make a separate breakdown of items under A. F. E. 115, which was also furnished to the auditor. This breakdown segregated the things which, in the opinion of the commission, should be paid from the A. F. E. 115 item. Among these various things was one which read:

"Janitors (4) 90.00 per mo. 4320.00 $8,940.00"

It is the theory of plaintiff that the budget item, which by the provisions of sections 1579, 1580 and 1581, *supra,* could not be exceeded, so far as it applied to plaintiff, was item A. F. E. 115 and the lump sum to be expended thereunder, and that so long as any balance remained therein, under our decision in *City of Phoenix* v. *Kidd,* 54 Ariz. 75, 92 Pac. (2d) 513, it was available for payment of wages under the minimum wage law.

It is the contention of defendant that it was the breakdown budget, which was never published nor approved at the meeting of the commission held under section 1580, *supra,* but which was later sent to the auditor along with the published budget, which con-

trolled, and that the fund set aside for janitors therein was fully expended, so that no amount was available to pay anything further for such services. Under our previous decisions the whole case turns upon this point.

If plaintiff's contention is correct, there was at all times during his period of service an ample amount on hand during the entire fiscal year to pay his claim. If the contention of defendant is the law, the funds available were exhausted with what plaintiff actually was paid, and he is not entitled to recover further. *City of Phoenix* v. *Kidd, supra.*

■ In the past the legislature has at times in the general appropriation bill made lump appropriations for various departments, and at times has broken them down. It has always been the custom of the various departments, and we think the only legal procedure, if the legislature appropriated a lump sum, to consider the only limitation on the division thereof among the legitimate expense of the department of that sum, the total amount appropriated. On the other hand, when the legislature has decided to make a breakdown in the general appropriation bill, the departments have always restricted their expenditures to the particular items as set forth in the breakdown.

■ Taking into consideration the provisions of the budget law, we are of the opinion that the legislature intended to make the budget, as prepared under sections 1579 and 1580, *supra,* the only legal limitation upon the manner in which the amounts so budgeted should be divided, and not the breakdown which the commission did not submit to the public but decided, in its own judgment, was the best method of using the funds. If, therefore, there was in budget item 115 enough money at all times to pay the minimum wage for any of the employees whose wages came out of that item, we think it was the duty of defendant to

approve the claim of such employee on the basis of the minimum wage, notwithstanding that the particular item therefor in the breakdown made by the commission might have been exceeded. If, however, as a result of the warrants drawn by the commission for other purposes properly included within the general item, the entire item was exhausted, then the rule previously applied by us in the case of *City of Phoenix* v. *Kidd, supra,* would be applicable here, and plaintiff could not recover. This rule in no manner hampers the department in using the budget item as it sees fit for the various subjects covered thereby. The only limitation is that if there is a surplus on hand in the item as shown by the budget prepared under sections 1579, 1580, *supra,* it must be used to pay proper claims under the minimum wage law. Under the law and the facts as they existed, plaintiff was entitled to be paid at the minimum wage fixed by the commission for manual labor, to wit, 62½¢ per hour.

There were several procedural questions raised by defendant, the principal one being that *mandamus* does not lie in the present case. We have held in the case of *State* v. *Angle, ante,* p. 46, 104 Pac. (2d) 172, that the approval of the head of the department is the first step in getting a claim paid, and that if he fails to approve a legal claim, *mandamus* not only lies against him but is the proper and essential preliminary to further proceedings. We see no reason why that rule is not applicable to the present case.

It is urged strenuously that defendant is responsible on his bond for the improper use of the imprest fund, and that if the auditor refuses to approve any of his expenditures thereunder, he is personally responsible therefor. This is true, but in a proceeding like this the court determines whether the particular claim which defendant is requested to approve is a legal charge or not, and if it is decided to be so, cer-

tainly the auditor will not and cannot refuse to approve it on defendant's accounting for the imprest fund.

We are of the opinion under the law and the facts that plaintiff is entitled to the amount of the judgment rendered by the superior court, and that it is the duty of defendant to draw his check upon the imprest fund for the amount in question.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.